UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* SHARA AMBROSECCHIA,<br><br>Plaintiffs,<br><br>v.<br><br>PADDOCK LABORATORIES, LLC, and<br>PERRIGO COMPANY plc,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 4:12CV2164 RLW |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Paddock Laboratories, LLC and Perrigo Company plc's Motion to Dismiss Relator's Second Amended Complaint[1] (ECF No. 56). The motion is fully briefed and ready for disposition.

## Background

Relator, Shara Ambrosecchia, a former employee of Paddock Laboratories, LLC ("Paddock"), brings this action on behalf of the United States of America and 25 separate States and the District of Columbia. According to the Second Amended Complaint, Relator alleges that Defendants Paddock and Perrigo Company plc ("Perrigo") violated the federal False Claims Act ("FCA") and analogous state statutes by submitting false classification information at the Centers for Medicare and Medicaid Services ("CMS") with respect to ten drugs allegedly not approved by the U.S. Food and Drug Administration ("FDA"). Relator claims that the submission of this

---

[1] On April 6, 2015, the Court granted Relator's Motion to Correct Misnomer, thus substituting Perrigo Company, plc for the non-entity Defendant Perrigo Company, Inc. The Court fails to find any entry of appearance for the Defendant Perrigo Company, a Michigan corporation, and thus does not deem that company a party to this action. Instead, Perrigo Company is mentioned in the subtext as the owner of subsidiary Defendant Paddock Laboratories, LLC. However, because Perrigo Company, plc is a proper party, the Court will allow it to join the Motion to Dismiss, which request was timely made after the Court ruled on Relator's motion to amend the Second Amended Complaint to correct the misnomer.

false classification information caused false claims for reimbursement to be submitted to Medicare and Medicaid by third-parties. Specifically, Relator contends that Defendants violated the FCA by making or using false records material to make false claims (Count I); causing false records to be used (Count II); causing the presentation of false claims for payment to Medicare and Medicaid (Count III); causing presentation of false claims for payment to the U.S. (Count IV); violated analogous statutes in California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Illinois, Indiana, Louisiana, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Virginia, and Wisconsin (Counts V-XXX); common fund claims regarding States without analogous statutes (Count XXXI); and common law *qui tam* claims against States without *qui tam* statutes (Count XXXII). Neither the United States of America nor any of the named States or District of Columbia has elected to intervene in the suit.

On February 4, 2015, Defendants filed a Motion to Dismiss Relator's Second Amended Complaint arguing that Relator's FCA claims are barred by the FCA's public disclosure bar because Relator's theory of liability is substantially identical to that alleged in *United States ex rel. Conrad v. Abbott Labs, Inc.* ("*Conrad*"). Further, Defendants maintain that Relator's Medicare Program allegations reflect a fundamental misunderstanding of the government programs and regulatory scheme at issue. Defendants also assert that Relator's claims with respect to two of the drug are false, as they were FDA approved for the relevant period. Additionally, Defendants claim that Relator's allegations pertaining to third-party submission of claims for reimbursement lack particularity sufficient to satisfy Fed. R. Civ. P. 9(b). With regard to the State law claims, Defendant argues that those claims should be dismissed under each respective State's public disclosure bars, Rule 12(b)(6), and Rule 9(b). Finally, Defendants

argue that Relator's claims under common fund and common law *qui tam* theories of liability are not actionable, and the Court lacks jurisdiction over non-*qui tam* States.

## **Public Disclosure Bar**

The *qui tam* provisions of the FCA allow "private persons acting on behalf of the government [to] sue those who defraud the government and share in any proceeds ultimately recovered." *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 675 (8th Cir. 1998). "In the FCA, Congress included what is nicknamed a 'public disclosure bar' which prevents *qui tam* relators from suing for fraud against the government when that fraud is already publicly known." *U.S. ex rel. Paulos v. Stryker Corp.*, 762 F.3d 688, 692 (8th Cir. 2014). The FCA's jurisdictional scheme encourages private citizen involvement in revealing fraud committed against the government while also preventing "'parasitic suits by opportunistic late-comers who add nothing to the exposure of the fraud.'" *Costner*, 153 F.3d at 675-76 (quoting *U.S. ex rel. Rabushka v. Crane Co.*, 40 F.3d 1509, 1511 (8th Cir. 1994)). Under the FCA:

> (A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed –
>
> > (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
> >
> > (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit or investigation; or
> >
> > (iii) from the news media,
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A). The original source exception applies where the relator:

> either (1) prior to a public disclosure under subsection (e)(4)(A), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has

3

voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C. § 3730(e)(4)(B). "Dismissal under the public disclosure bar is thus required if (1) the defendant has shown public disclosure under § 3730(e)(4)(A), and (2) the relator does not fit § 3730(e)(4)(B)'s definition of 'original source.'" *Paulos*, 762 F.3d at 692.

In the instant case, Defendants argue that dismissal is warranted under the public disclosure bar because the Government was aware of the allegations underlying Relator's claims in 2002. Specifically, Defendants assert that substantially the same information giving rise to the allegations was disclosed in a prior lawsuit, *United States ex rel. Conrad v. Abbott Labs., Inc.*, No. 02-11738-RWZ (D. Mass 2002). Defendants also maintain that identical information was disclosed in federal reports. Further, Defendants argue that Relator has not materially added to the information already known to the Government and is therefore not an original source. Relator, on the other hand, contends that her claims do not meet the requirements of "substantially the same" contained in § 3730(e)(4)(A) because the prior litigation involved different allegations and transactions. Additionally, Relator asserts that she is an "original source" such that the public disclosure bar does not apply.

Relator argues that a motion to dismiss is not the proper avenue to bring a claim that public disclosure bars a lawsuit and that Defendants were required to raise the public disclosure bar as an affirmative defense. Neither is true. Plaintiff overlooks recent case law from the Eighth Circuit declining to address whether the public disclosure bar must be raised as an affirmative defense and finding, "[e]ven if public disclosure were an affirmative defense, 'technical failure to comply with Rule 8(c) is not fatal' when the defense 'is raised in the trial court in a manner that does not result in unfair surprise.'" *U.S. ex rel. Kraxberger v. Kansas City Power & Light Co.*, 756 F.3d 1075, 1082 (8th Cir. 2014) (quoting *First Union Nat'l Bank v. Pictet Overseas Trust Corp., Ltd.*, 477 F.3d 616, 622 (8th Cir. 2007) (internal quotation

4

omitted)). Further, a motion to dismiss is the appropriate vehicle to assert a claim under the public disclosure bar of § 3730(e)(4), and courts may consider alleged public documents in its dismissal. *Kraxberger*, 756 F.3d at 1083 ("Since the FCA *requires* a court to dismiss a claim based on public disclosure, a court necessarily considers the alleged public documents in its dismissal.").

Here, Defendants allege that the *Conrad* litigation and other prior allegations and notices provided the Government with notice of the potential wrongdoing. Relator bears the burden of establishing the inapplicability of the public disclosure bar. *U.S. ex rel. Ketroser v. Mayo Foundation*, 729 F.3d 825, 828 (8th Cir. 2013).

The *Conrad* complaints were unsealed and became public record on November 17, 2010, prior to the date Relator filed her original Complaint. (Mem. in Support of Mot. to Dismiss, Ex. I p. 14, Electronic Order of 11/17/10 Granting Mot. to Unseal, ECF No. 48-9) Relator filed her Complaint on November 20, 2012, two years later. In *Conrad*, Relator claimed that "Defendants submitted false records or statements to the United States through the federal Center for Medicare and Medicaid Services ("CMS") and thereby caused false claims for payment to be made through state Medicaid programs for unapproved or ineffective drugs, or for products that are not drugs at all." (Defs.' Ex. H, *Conrad* Eighth Am. Compl. ¶ 1, ECF No. 48-8) Further, the *Conrad* complaint asserts that the "false information corrupted CMS's list of Medicaid reimbursable drugs, caused claims for ineligible products to be submitted to state Medicaid programs, led state programs to pay for and in turn seek reimbursement from CMS for such ineligible drugs, and thereby caused CMS to pay false claims . . . ." (*Id.* at ¶ 3) The alleged FCA violations included "knowingly submitting false information concerning 'New Drugs' that have not been FDA approved . . . [and] knowingly causing to be presented false claims by the submission of the false information described herein." (*Id.* at ¶ 4)

The allegations in Relator's original Complaint state that numerous drug manufacturers, including Defendant Paddock initially, "reported false information to CMS regarding the regulatory status of these products, representing that they were '*safe and effective*' in order to make them ostensibly eligible for Medicare reimbursement, as well as for reimbursement through other government-funded healthcare programs." (Compl. ¶ 1, ECF No. 1) Moreover, Relator contends that the "false information corrupted CMS's list of reimbursement-eligible drugs, which caused claims for ineligible products to be submitted to Medicare and other government-funded healthcare programs, through CMS, and led CMS to improperly pay reimbursement for such ineligible drugs." (*Id.* at ¶ 2) Relator claims that the Defendant drug manufacturers violated the FCA "by knowingly and/or recklessly submitting false classification information concerning drugs which have not been FDA approved . . . [and] by knowingly and/or recklessly causing the presentation of false claims by submitting the false information described herein." (*Id.* at ¶ 3) Relator essentially repeats these allegations in her Second Amended Complaint. (Second Am. Compl. ¶¶ 1-3)

Further, *Conrad's* Fourth Amended Complaint alleged that defendants made fraudulent misrepresentations to CMS by reporting false Drug Efficacy Study Implementation ("DESI") codes for unapproved new drugs and non-drugs indicating that they were covered under Medicaid and other government healthcare programs. (Defs.' Ex. F, *Conrad* Fourth Am. Compl. ¶¶ 46-48, ECF No. 48-6) *Conrad* also maintained that the misrepresentations led to reimbursement under Medicaid and other government healthcare programs. (*Id.* at ¶ 46) In addition, the Eighth Amended Complaint alleged that defendants submitted "false FDA approval dates and false DESI status for their Illegal Drugs; and false FDA approval dates and rogue NDC numbers for their Non-Drugs. This false information made their ineligible products appear to be Covered Outpatient Drugs." (Defs.' Ex. H, *Conrad* Eighth Am. Compl. ¶ 49, ECF No. 48-8)

Further, the *Conrad* relator relied on data contained in CMS Quarterly Reports, CMS Drug Data Reports, the FDA *Approved Drug Products and Therapeutic Equivalence Evaluations* ("Orange Book"), the FDA *National Drug Code Directory*, and Federal Register Notices. *U.S. ex rel. Conrad v. Abbott Laboratories, Inc.*, No. 02-11738-RWZ, 2013 WL 682740, at *3 (D. Mass. Feb. 25, 2013). In *Conrad*, the listed drugs included Hydrocortisone Acetate Suppositories, Hyoscyamine Sulfate, and Bisacodyl Suppositories. (Defs.' Ex. G, *Conrad* Fifth Am. Compl. ¶ 15Q, Ex. Q, ECF No. 48-7; Defs.' Ex. E, *Conrad* Compl. ¶52, ECF No. 48-5)

In Relator's Second Amended Complaint in the case now before this Court, Relator alleges that "when Defendants submitted false FDA approval dates, NDC numbers and false DESI status codes for their unapproved drugs, the false information made their ineligible products appear to be eligible for reimbursement through Medicare, Medicaid and other government-funded healthcare programs." (Second Am. Compl. ¶ 42, ECF No. 29) Likewise, Relator maintains that "CMS and the State Governments relied on the false information contained in the CMS data base and unwittingly paid claims for ineligible drugs." (*Id.* at ¶ 43) In addition, Relator relies upon the Orange Book, CMS Quarterly Reports, and Federal Register Notices to support her claims. (*Id.* at ¶¶ 31, 37, 43) Relator further lists Hydrocortisone Acetate Suppositories, Hyoscyamine Sulfate, and Bisacodyl Suppositories in her list of products that Defendants' allegedly falsely classified. (*Id.* at ¶¶ 43b, 43c, and 43h)

Review of the allegations contained in the *Conrad* Complaints and Relator Ambrosecchia's Complaints shows that Relator raises "substantially the same" allegations as those in *Conrad*. Without presenting case law in support, Relator argues that Defendants' theory that allegations made against different drug companies in a different case involving a similar series of drugs constitute public disclosure is "ridiculous." However, Defendants correctly note that the FCA's public disclosure bar has a "generally broad scope." *Schindler Elevator Corp. v.*

7

*U.S. ex rel. Kirk*, 563 U.S. 401, 131 S. Ct. 1885, 1891 (2011). Indeed, the purpose of the public disclosure bar is "'to strike *a balance* between encouraging private persons to root out fraud and stifling parasitic lawsuits.'" *Id.* at 1894 (quoting *Graham Cty. Soil and Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 295 (2010)). Public disclosure includes a "*federal* criminal, civil, or administrative hearing in which the Government is a party[,]" as well as congressional, GAO or any other federal report, hearing, or investigation. *U.S. ex rel. Paulos v. Stryker Corp.*, No. 11-0041-CV-W-ODS, 2013 WL 2666346, at *3 (W.D. Mo. June 12, 2013).

Here, not only was Defendant Paddock named as a defendant in the original *Conrad* complaint, but amended versions of the complaint included some of the same drugs that are the subject of Relator Ambrosecchia's Complaints. Further, Relator acknowledges that the *Conrad* case alleged industry-wide conduct. (Relator's Mem. in Opp. 12, ECF No. 56) "Industry-wide public disclosures bar *qui tam* actions against any defendant who is directly identifiable from the public disclosures." *U.S. ex rel. Gear v. Emergency Med. Assoc. of Ill., Inc.*, 436 F.3d 726, 729 (7th Cir. 2006) (rejecting relator's argument that public disclosure only occurs where the specific defendants named in the lawsuit had been identified in the public records); *see also U.S. ex rel. Zizic v. Q2Administrators, LLC,* 728 F.3d 228, 238 (3d Cir. 2013) (finding that, although defendants weren't named in the previous litigation, they were directly identifiable from that public disclosure). In addition, the fraudulent scheme alleged by Relator is substantially the same as those alleged in the *Conrad* litigation against numerous drug manufacturers. *See Gear,* 436 F.3d at 729 (finding that public disclosing industry-wide abuses and investigations regarding the fraudulent billing of Medicare implicated defendants).

Moreover, Relator specifically mentions that she relied on government reports from the FDA *Orange Book*, CMS data files, FDA reports, and Federal Register notices as the basis for her claims. In *Conrad*, the district court ultimately found that these same sources publicly

disclosed the fraud alleged in relator's complaint. *U.S. ex rel. Conrad v. Abbott Labs., Inc.*, No. 02-11738-RWZ, 2013 WL 682740, at *4 (D. Mass. Feb. 25, 2013).

Relator relies upon *Leveski v. ITT Educ. Servs., Inc.* to support her claim that the allegations in her complaint are not "substantially the same" as those previously disclosed. 719 F.3d 818 (7th Cir. 2013). In *Leveski*, the court held that the relator's allegations were different enough from the allegations raised against the defendant in a prior FCA suit to bring relator's suit outside the FCA's public disclosure bar. *Id.* at 730-31. In that case, the Relator alleged a different scheme and violations than a previous case, and the *Leveski* court found that "viewing FCA claims 'at the highest level of generality . . . in order to wipe out *qui tam* suits that rest on genuinely new and material information is not sound.'" *Id.* at 831 (quoting *U.S. ex rel. Goldberg v. Rush Univ. Med. Ctr.*, 680 F.3d 933, 936 (7th Cir. 2012)).

The Court finds the Relator's reliance on *Leveski* is misplaced. Here, Relator fails to demonstrate that her suit rest on new and material information. Her allegations may add some new details and mention different drugs, but the allegedly fraudulent scheme is substantially the same as the scheme in *Conrad*, as are the sources of public information relied upon by Relator. The public disclosure bar is triggered where the allegations merely add some color but ultimately target the same fraudulent scheme. *U.S. ex rel. Poteet v. Bahler Med., Inc.*, 619 F.3d 104, 115 (1st Cir. 2010). As found in *Conrad*:

> [Defendants] argue instead that if relator's allegations are true, then both the misrepresented facts and the true facts would have been disclosed by the five public sources listed above. The misrepresented facts would be disclosed by CMS's drug product data files and state drug utilization data files; the former files would show any false statement that defendants' products were covered outpatient drugs and any false DESI codes, while the latter would show that state Medicaid programs had relied on those misrepresentations. The true facts would be disclosed by the *Orange* Book, which lists all FDA-approved drugs (making defendants' unapproved drugs and non-drugs conspicuous by their absence); the Federal Register notices, which would list any DESI determinations about defendants' drugs (or about drugs identical, related, or similar to defendants');

9

> and the *NDC Directory*, which provides enough information to show whether two drugs are identical, related, or similar.
>
> Relator concedes that these sources were publicly available, but argues that they do no raise any inference of fraud. . . . In this case, . . . , both sets of facts were apparently publicly available. If relator's allegations are true, the CMS data files would show defendants claiming their products were covered outpatient drugs with appropriate DESI codes, while the other sources would show the products were not approved drugs and/or had ineligible DESI codes. That contradiction in the publicly available information is enough to "lead to a plausible inference of fraud." *Ondis*, 587 F.3d at 54.

*Conrad*, 2013 WL 682740, at *4.[2]

Here, not only did Relator rely on the same public information that the *Conrad* court found led to a plausible inference of fraud,[3] but the *Conrad* litigation, which is public record, directly alleged substantially the same fraudulent scheme described by Relator. These disclosures of fraudulent practices by drug manufacturing companies "sufficiently alerted the government to the likelihood" that the named Defendants in this suit may also engage in such practice. *U.S. ex rel. Fine v. Sandia Corp.*, 70 F.3d 568, 571 (10th Cir. 1995). Thus, the Court finds that Relator's FCA claims are precluded by the public disclosure bar, and the Court lacks jurisdiction to afford the Relator relief under the FCA. *Paulos*, 762 F.3d at 693; *U.S. ex rel. Newell v. City of St. Paul, Minn.*, 728 F.3d 791, 795 (8th Cir. 2013).

### B. Original Source

---

[2] Relator argues that because the *Conrad* case pertained to pre-amendment of the relevant FCA provision regarding the public disclosure bar, its reasoning is inapplicable. The Court disagrees. In *Paulos*, relator's claims arose both before and after the public disclosure bar was amended. 2013 WL 2666346, at *4. The court found that, although the two versions of the public disclosure bar employed different language, the analysis was essentially the same. *Id.* Further, on appeal, the Eighth Circuit Court of Appeals assumed, without deciding, that the current version of the FCA applied, and affirmed the lower court's decision finding that the public disclosure was sufficient to bar relator's claims. *Paulos*, 762 F.3d 688, 692 n.7.

[3] For example, Relator claims that "All FDA approved drugs are listed on the FDA's website . . . as well as within *The Orange Book*, which contains the agency's public listing. Drugs that are not listed in either of those places are not approved by the FDA." (Second Am. Compl. ¶ 31, ECF No. 29)

10

Because the public disclosure bar applies in this case, Relator's claims may succeed only if she is an original source. *Id.* at 694. Relator "qualifies as an 'original source' if (1) before the public disclosures, he 'voluntarily disclosed to the Government the information on which' his claims' 'allegations or transactions . . . are based,' or (2) he 'has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and . . . has voluntarily provided the information to the Government before filing [this] action.'" *Id.* (quoting 31 U.S.C. § 3730(e)(4)(B)).

Here, Relator maintains that she has sufficiently alleged she is an original source because she was personally aware of the conduct by seeing the conduct with her own eyes, reading reports and documents generated by Defendants, and participated in conversations with Defendants regarding the subjects of the lawsuit. (Second Am. Compl. ¶ 14, ECF No. 29) She further asserts that she did not rely on any publicly discloses sources in pleading the Amended Complaint and relied instead on direct and independent knowledge, which she relayed to the United States prior to filing the Amended Complaint.[4] (*Id.*) Relator alleges her knowledge supplements and materially adds to any information existing in the public domain. (*Id.*) Finally, Relator claims that she has worked for both Defendants and acquired knowledge of their practices during her tenure with Defendant companies. (*Id.* at ¶ 16)

Defendants, however, argue that Relator is not an original source because her information is based on her review of the same public reporting that led to the dismissal of the *Conrad*

---

[4] Relator cannot show, nor does she argue in her Memorandum in Opposition to Defendants' Joint Motion to Dismiss, that prior to a public disclosure she "voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based." 31 U.S.C. § 3730(e)(4)(B). As previously stated, the *Conrad* litigation became public record in 2010, and the other information upon which Relator relies was also available before Relator filed her Complaint in 2012. Further, Relator does not allege that she provided the information to the Government before filing her FCA action. Instead, she claims that she informed the United States prior to filing her Second Amended Complaint on October 22, 2014. (Second Am. Compl. ¶ 14, ECF No. 29)

11

complaint and because her allegations are not independent of, nor do they materially add to, the public disclosures. The Court agrees with Defendants and finds that Relator does not qualify as an original source to overcome the public disclosure bar.

"Where the [relator] fails to provide the district court with 'specific facts showing that she had direct and independent knowledge of the [information] upon which she bases her FCA claims,' dismissal for lack of subject-matter jurisdiction is appropriate." *U.S. ex rel. Schubert v. All Children's Health Sys., Inc.*, 941 F. Supp. 2d 1332, 1336 (M.D. Fla. 2013) (citing *Battle v. Bd. of Regents for Georgia*, 468 F.3d 755, 762 (11th Cir. 2006)). Relator fails to point to any specific facts in her Second Amended Complaint supporting her claim that she is an original source. Relator merely argues that by virtue of her position with Defendant companies, she has sufficiently pled information that was not publicly known prior to Perrigo's 2014 Annual Report and not subject to any prior public discloser, thus adding materially to the prosecution of the case. Relator's contention that she satisfies the "original source" requirement is merely a legal conclusion, not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ("But the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual content.").

Instead, the record shows that Relator's Second Amended Complaint relies upon reports and information found to be subject to the FCA's public disclosure bar. *See Conrad*, 2013 WL 682740, at *4. Further, she provides only conclusory allegations with no factual support for her assertion that her knowledge is independent and would materially add to the publicly disclosed information regarding Defendants' scienter. Such failure to support these claims is fatal to Relator's case. *See Paulos,* 762 F.3d at 695-96 (finding that relator's personal insight did not contribute much more than tangentially relevant information to the fraud claim and that relator's warnings to the manufacturer did not significantly add to the scienter issue where public reports

12

already revealed the alleged fraud); *Kraxberger*, 756 F.3d at 1080 (concluding that the relator's information about his false-rate claim did not materially add to the publicly disclosed information about rates, even assuming relator's knowledge was independent). Therefore, the Court finds that Relator is not an "original source," and her FCA claims should be dismissed under the public disclosure bar.[5] *Paulos*, 762 F.3d at 691.

## Relator's State Claims

The remaining counts in Relator's Second Amended Complaint arise under various State statutes similar to the federal False Claims Act.[6] (Second Am. Compl. ¶¶ 67-196, ECF No. 29) Defendant requests that the Court decline to exercise supplemental jurisdiction over the State law claims should the Court dismiss the federal FCA claims. The Court finds that the State tribunals should determine the sufficiency of Relator's claims under the applicable State statutes. Therefore, the Court will decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367 and will instead dismiss the State law claims without prejudice. *Goughnour v. REM Minnesota, Inc.*, No. 06-1601 PAM/RLE, 2007 WL 4179354, at *5 (D. Minn. Nov. 20, 2007) (declining to exercise supplemental jurisdiction over State law claim after dismissing relator's FCA claims).

Accordingly,

---

[5] Although Relator has not filed a motion to file yet another amended complaint, she does make such request in her Memorandum in Opposition, should the Court find the Second Amended Complaint deficient. (Relator's Mem. in Opp. 28, ECF No. 56) The Court notes that Relator has already been allowed to amend her Complaint twice, and she has not filed a proper motion under Fed. R. Civ. P. 15(a) or indicated how another Amended Complaint would give this Court jurisdiction over her FCA claims foreclosed by the public disclosure bar. Therefore, the Court will deny Relator leave to amend and dismiss her FCA claims with prejudice. *Misischia v. St. John's Mercy Health Sys.*, 457 F.3d 800, 806 (8th Cir. 2006); *see also Zizic*, 728 F.3d at 243 (affirming dismissal of relator's FCA complaint pursuant to the public disclosure bar with prejudice and finding court did not abuse its discretion in denying relator's improper request for leave to amend his complaint).

[6] In her Memorandum in Opposition, Relator states that she does not oppose the dismissal of her claims in Counts XXXI and XXXII pertaining to common fund and common law *qui tam*. The Court will accordingly dismiss those counts.

13

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Relator's Second Amended Complaint (ECF No. 47) is **GRANTED** as follows, consistent with this Memorandum and Order:

Relator's claims under the False Claims Act (Counts I-IV) are **DISMISSED** with prejudice based upon the False Claims Act Public Disclosure Bar.

Relator's claims for Common Fund and Common Law *Qui Tam* (Counts XXXI-XXXII) are **DISMISSED** without prejudice.

Relator's State Claims (Counts V-XXX) are **DISMISSED** without prejudice

Dated this 23rd day of September, 2015.

*Ronnie L. White*

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**